## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JORDAN ZANTIZ** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-2908** |
| **STATE OF LOUISIANA** | **SECTION "N"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FEDERAL PROCEDURAL BACKGROUND

On December 14, 2012, Jordan Zantiz filed a petition for federal habeas corpus relief in which he asserted the following three (3) compound claims:[2] (1) The verdict was contrary to the law and evidence; the State's witnesses were impeached when they lied; the trial court improperly denied challenges and strikes during jury selection; and he was not advised of his rights at the multiple bill hearing. (2) An involuntary stipulation to the multiple bill occurred when the state trial court refused to rule on the motion to quash and no plea colloquy occurred. (3) The State unreasonably delayed filing the multiple bill.

In its initial answer and opposition memorandum, the State argued in part that Zantiz failed to exhaust state court remedies on his claims that the conviction was contrary to the law and evidence and that the State's witnesses were impeached at trial.[3] On May 30, 2013, I issued a report and recommendation in which I recommended that Zantiz's federal habeas corpus petition be dismissed without prejudice for failure to exhaust state court remedies as to those two claims.[4]  Zantiz then moved voluntarily to

[2]Rec. Doc. No. 1.

[3]Rec. Doc. Nos. 13, 14.

[4]Rec. Doc. No. 21.

2

dismiss the following claims:[5] (1) The verdict was contrary to the law and evidence. (2) The State's witnesses were impeached at trial. (3) The trial court erred in denying challenges and strikes during jury selection.  Zantiz specifically indicated his intent to pursue review of his "three post-conviction(s) claims," which he identified as follows: (1) He was not advised of his rights at the multiple bill hearing. (2) An involuntary stipulation or plea to the multiple offender bill occurred. (3) The district attorney unreasonably delayed in filing the multiple offender bill once he became aware of the prior conviction.

On July 26, 2013, the presiding district judge granted Zantiz's motion to dismiss and referred the matter to me for consideration of the remaining issues.[6]

II.   <u>STATE COURT FACTUAL AND PROCEDURAL BACKGROUND</u>

Although my prior report details the procedural history of the underlying state criminal proceedings, the relevant facts and history are repeated here for ease of reference.

---

[5]Rec. Doc. No. 24.

[6]Rec. Doc. No. 25.

On October 2, 2007, Zantiz was charged by bill of information in St. Tammany

Parish with one count of obscenity.[7]   The Louisiana First Circuit Court of Appeal

summarized the facts of the case as determined at trial as follows:

> The defendant and his wife, Amy Johnson, who lived in Florida, traveled around in a van as independent contractors for AT&T, delivering telephone books. As they traveled, they lived in the van to save money.  On August 21, 2007, they stopped at the Holiday Inn in Covington to use the bathroom and clean up. Before leaving the hotel lobby, Amy began talking to some people she met, and the defendant sat down near the bathroom area with a USA Today newspaper provided free by the hotel.
>
> Brandy McCantz, who worked at the front desk at Holiday Inn, testified at trial. She stated she noticed the defendant sitting near the bathrooms for about 45 minutes holding his newspaper upside down. Brandy needed to use the bathroom.  As she walked past the defendant to get to the ladies bathroom, she saw the defendant smiling at her and stroking his erect penis, which was outside of his shorts. The defendant was holding up the newspaper with his other hand. Shocked, Brandy quickly entered the ladies bathroom. She then exited and ran to the front desk.  She related what she saw to Emma Brannon, the operations manager, and Donald Julien, the executive chef. Donald told the defendant to leave the hotel, and the police were called. Emma, who also testified at trial, stated that she followed the defendant to his van. She got the license plate number, a description of the van and the defendant, and relayed this information to the police. Brandy also provided a written statement to the police.
>
> Shortly thereafter, the police found the defendant and Amy in a Wal-Mart parking lot in Covington. Corporal Matthew Nelson, with the St. Tammany Parish Sheriff's Office, <u>Mirandized</u> the defendant and informed him about the complaint.  The defendant told Corporal Nelson that he was not sure, but he believed his penis may have fallen out of his pants. The

---

[7]St. Rec. Vol. 1 of 6, Bill of Information, 10/2/07. The bill of information originally charged Zantiz with a second offense of obscenity. Zantiz moved to quash the second offense reference and the state trial court granted the motion on October 30, 2008, leaving on the charge of obscenity. St. Rec. Vol. 1 of 6, Motion to Quash or Suppress, 3/19/08; Trial Minutes, p. 1, 10/30/08.

>defendant was arrested. During the booking process at the police station, Corporal Nelson overheard the defendant state, "I can't help it if my dick falls out of these pants and my pants are made of that fish net type of material.  It falls out easy."  Amy testified at trial she was near the defendant most of the time when they were in the lobby, and she never saw him masturbate or saw his penis exposed.

State v. Zantiz, 24 So.3d 1034 (La. App. 1st Cir. 2009) (Table); State v. Zantiz, No. 2009-KA-0771, 2009 WL 3447427, at *1 (La. App. 1st Cir. Oct. 27, 2009) (footnote omitted); State Record Volume 5 of 6, Louisiana First Circuit Court of Appeal Opinion, 2009-KA-0771, pages 2-3, October 27, 2009 (footnote omitted).

Zantiz was tried before a jury on October 30, 2008, and was found guilty as charged of obscenity.[8]  On December 16, 2008, the state trial court denied Zantiz's motions for post-verdict judgment of acquittal and for a new trial.[9]  After waiver of legal delays, the court sentenced Zantiz to three (3) years in prison at hard labor.[10]

Thereafter, on April 30, 2009, the State filed a multiple bill charging Zantiz as a third felony offender.[11]  Zantiz entered a not guilty plea to the bill and later filed a pro se

---

[8]St. Rec. Vol. 1 of 6, Trial Minutes (7 pages), 10/30/08; Trial Transcript, 10/30/08; St. Rec. Vol. 2 of 6, Trial Transcript (continued), 10/30/08.

[9]St. Rec. Vol. 1 of 6, Motion for Post-Verdict Judgment of Acquittal, 11/10/08; Motion for New Trial, 11/10/08; Sentencing Minutes, 12/16/08; St. Rec. Vol. 4 of 6, Sentencing Transcript, p. 340, 12/16/08.

[10]St. Rec. Vol. 1 of 6, Sentencing Minutes, 12/16/08; St. Rec. Vol. 4 of 6, Sentencing Transcript, p. 341, 12/16/08.

[11]St. Rec. Vol. 4 of 6, Multiple Bill, 4/30/09.

motion to quash it.[12]  At a hearing on September 10, 2009, Zantiz withdrew his prior plea and entered a guilty plea as a third offender.[13]  After declaring the motion to quash moot, the state trial court sentenced Zantiz to five (5) years in prison at hard labor without benefit of probation or suspension of sentence.[14]

On direct appeal to the Louisiana First Circuit, Zantiz's appointed counsel asserted two (2) errors:[15] (1) The trial court erred in denying the defendant's challenge for cause of jurors Nancy Wilson and Dorothea Moody. (2) The sentence was excessive.  The appellate court affirmed the conviction and sentence on October 27, 2009, finding no merit in either claim.[16]  On its review for errors patent, the court found no error, after it determined that Zantiz's counsel waived legal delays between denial of the motion for new trial and the sentencing.

---

[12]St. Rec. Vol. 3 of 6, Minute Entry, 5/18/09; St. Rec. Vol. 4 of 6, Motion to Quash, 8/17/09.

[13]St. Rec. Vol. 3 of 6, Multiple Bill Hearing Minutes, 9/10/09; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 9/10/09.

[14]Id.

[15]St. Rec. Vol. 6 of 6, Appeal Brief, 2009-KA-0771, 5/22/09.

[16]State v. Zantiz, 24 So.3d at 1034; State v. Zantiz, 2009 WL 3447427, at *1; St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2009-KA-0771, 10/27/09.

The Louisiana Supreme Court denied Zantiz's subsequent writ application without stated reasons on May 7, 2010.[17]  The court later denied Zantiz's motion for reconsideration on September 24, 2010.[18]

On appeal from the multiple offender proceeding, Zantiz's appointed counsel argued that the state trial court erred when it failed to advise him of his rights before accepting the guilty plea to the multiple bill.[19] Zantiz also asserted three additional errors pro se:[20] (1) He was not advised of his rights before entering the guilty plea. (2) The trial court erred in failing to rule on the motion to quash before accepting the guilty plea. (3) The stipulation and plea to the multiple bill were not voluntarily made because he was coerced by the trial court to take a plea at another hearing that was not transcribed or made part of the record.

On February 11, 2011, the Louisiana First Circuit affirmed Zantiz's multiple offender adjudication, finding no merit to his claim that he was not advised of his rights

---

[17]State v. Zantiz, 34 So.3d 860 (La. 2010); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2009-KO-2553, 5/7/10; La. S. Ct. Writ Application, 09-KO-2553, 11/24/09 (dated 11/17/09); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2009-KO-2553, 11/24/09 (showing postmark 11/19/09).

[18]State v. Zantiz, 45 So.3d 1064 (La. 2010); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2009-KO-2553, 9/24/10; Motion for Reconsideration, 09-KC-2553, 6/22/10 (dated 6/4/10).

[19]St. Rec. Vol. 6 of 6, Appeal Brief, 2010-KA-0999, 7/14/10.

[20]St. Rec. Vol. 6 of 6, Pro Se Appeal Brief, 2010-KA-0999, 8/11/10.

prior to the plea.[21]  The court also found that Zantiz waived review of the claim that the trial court failed to rule on the motion to quash because he did not request a ruling or object to the trial court's declaration that the motion was moot.  As to the third pro se claim, the court held that "the appeal record is insufficient to address the merits of the defendant's claim of coercion," and instructed that Zantiz "must raise this claim in an application for post-conviction relief, wherein an evidentiary hearing can be held, if necessary."[22]

The Louisiana Supreme Court denied Zantiz's subsequent writ application on September 23, 2011.[23]  The court also denied his request for reconsideration on December 16, 2011.[24]  Zantiz's conviction became final ninety (90) days later, on March 15, 2012, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C.

---

[21]State v. Zantiz, 57 So.3d 609 (La. App. 1st Cir. 2011) (Table); State v. Zantiz, No. 2010-KA-0999, 2011 WL 2119769, at *1 (La. App. 1st Cir. Feb. 11, 2011); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2010-KA-0999, 2/11/11.

[22]State v. Zantiz, 2011 WL 2119769, at *2; St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2010-KA-0999, pp. 4-5, 2/11/11.

[23]State v. Zantiz, 69 So.3d 1157 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KO-0481, 9/23/11; La. S. Ct. Writ Application, 11-KO-481, 3/10/11 (postal meter 3/3/11, dated 3/3/11); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2011-KO-481, 3/10/11 (showing postal meter 3/3/11).

[24]State v. Zantiz, 76 So.3d 1189 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KO-0481, 12/16/11; Motion for Reconsideration, 11-KO-481, 10/4/11 (postal meter 9/28/11, dated 9/27/11).

§ 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

In the meantime, between August 19 and October 5, 2011, Zantiz submitted three separate applications for post-conviction relief to the state trial court in which he asserted the same three (3) grounds:[25] (1) He was not advised of his rights before entry of his guilty plea to the multiple bill. (2) The State unreasonably delayed filing the multiple bill. (3) He did not voluntarily enter the stipulation and plea to the multiple bill.  The state trial court entered one-word denials on each application on August 25, September 14 and October 12, 2011, respectively.[26]  Zantiz did not seek further review of these rulings.

After his multiple bill appeal was resolved, Zantiz submitted a fourth application for post-conviction relief to the state trial on January 5, 2012, again urging the same three

---

[25]St. Rec. Vol. 5 of 6, Uniform Application for Post-Conviction Relief, 8/23/11 (dated 8/29/11); Uniform Application for Post-Conviction Relief, 9/1/11 (dated 8/30/11); Uniform Application for Post-Conviction Relief, 10/10/11 (dated 10/5/11).

[26]St. Rec. Vol. 5 of 6, Trial Court Order, 8/25/11; Trial Court Order, 9/14/11; Trial Court Order, 10/12/11.

(3) grounds relating to the multiple offender proceeding.[27]  On January 27, 2012, the state trial court again issued a one-word denial followed by the parenthetical notation, "(repetitive, issues raised on appeal)."[28]

The Louisiana First Circuit denied Zantiz's subsequent writ application without stated reasons on May 21, 2012.[29]  By order issued June 25, 2012, the court did not consider Zantiz's request for reconsideration because it was procedurally improper.[30]

The Louisiana Supreme Court denied Zantiz's related writ application on October 26, 2012, finding his post-conviction claims procedurally barred pursuant to La. Code Crim. P. art. 930.3, State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996) and State v. Cotton, 45 So.3d 1030 (La. 2010), each of which prohibits post-conviction review of sentencing errors, including those during habitual offender proceedings.[31]

---

[27]St. Rec. Vol. 5 of 6, Uniform Application for Post-Conviction Relief, 1/13/12 (dated 1/5/12).

[28]St. Rec. Vol. 5 of 6, Trial Court Order, 1/27/12.

[29]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2012-KW-0472, 5/21/12; St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2012-KW-0472, 3/20/12.

[30]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2012-KW-0472, 6/25/12.

[31]State ex rel. Zantiz v. State, 99 So.3d 647 (La. 2012); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2012-KH-1464, 10/26/12; La. S. Ct. Writ Application, 12-KH-1464, 6/26/12 (postal meter 6/22/12, dated 6/20/12); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2012-KH-1464, 6/26/12 (postal meter 6/22/12).

III.    FEDERAL HABEAS PETITION

As noted above, Zantiz's federal petition was originally filed by the clerk of court on December 14, 2012.[32]  After his voluntary dismissal of some of his claims, including those that had not been exhausted, Zantiz is currently pursuing only the following three exhausted claims: (1) He was not advised of his rights at the multiple bill hearing. (2) Involuntary stipulation to the multiple bill occurred when the state trial court refused to rule on the motion to quash and proceeded without a plea colloquy. (3) The State unreasonably delayed filing the multiple bill.

In its original answer and opposition memorandum, the State argued that the first two claims are procedurally barred from federal habeas review because they were procedurally defaulted in state court.[33]  In addition, the State contends that Zantiz's remaining claim, that he was not advised of his rights before entering his guilty plea to the multiple bill, is without merit.  In its supplemental opposition memorandum, the State reiterates that the first two remaining claims are in procedural default and would otherwise be without merit.

---

[32]Rec. Doc. No. 1.

[33]Rec. Doc. Nos. 13, 14.

In his reply to the State's first opposition memorandum, Zantiz reasserts his arguments in support of his challenges to his multiple offender proceedings.[34]  In his supplemental brief filed on August 26, 2013, Zantiz contends that his claims should not be considered barred because he is challenging more than just the enhanced sentence. He argues that the State should have given him earlier notice of its intent to file a multiple bill.  He also argues that the record does not affirmatively show that he was actually advised of his rights at any time before his adjudication as a third felony offender.

IV.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[35] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[34]Rec. Doc. No. 20.

[35]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Zantiz's petition, which, for reasons discussed below, is deemed filed in this court on November 23, 2012.[36]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Zantiz's federal petition was timely filed.  The State argues, however, that two of Zantiz's claims are procedurally defaulted.  I will address this defense before proceeding to the merits of the other claim.

## V.   PROCEDURAL DEFAULT (CLAIMS NOS. 2 AND 3)

In his second and third claims, Zantiz argues that his stipulation or plea to the multiple bill occurred when he was not first advised of his rights, the state trial court refused to rule on his motion to quash and accepted the stipulation without a plea

---

[36]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Zantiz's petition was filed by the clerk of court on December 14, 2012, when the he was granted pauper status. Zantiz's signature on the petition was dated November 23, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

colloquy, and that the State unreasonably delayed filing the multiple bill. Zantiz asserted these claims on post-conviction review in the state courts. The Louisiana Supreme Court ultimately denied relief on these claims as procedurally improper, citing La. Code Crim. P. art. 930.3, State ex rel. Melinie, 665 So.2d 1172, and State v. Cotton, 45 So.3d 1030.

Before the supreme court's denial on procedural grounds, the Louisiana First Circuit on direct appeal had found the first claim, that he was not advised of his rights, meritless. In that same appeal, the appellate court also found that Zantiz did not object to the trial court's failure to rule on the motion to quash, rendering that claim waived and not preserved for appellate review. The appellate court's decision was affirmed by the Louisiana Supreme Court's one-word denial of the subsequent writ application. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

14

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  In this case, the State concedes that the claim related to whether Zantiz was advised of his rights can be reviewed by this court on the merits since it was addressed on the merits in the state courts. The State seeks dismissal of the remaining claims, however, based on the procedural defaults imposed by the Louisiana Supreme Court.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, __U.S.__, 131 S. Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902.  A state procedural rule "can be

15

'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 558 U.S. 53, __, 130 S. Ct. 612, 618 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  Beard, 130 S. Ct. at 617 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

In its October 26, 2012, order denying Zantiz's writ application, the Louisiana Supreme Court relied on La. Code Crim. P. art. 930.3, State ex rel. Melinie, and State v. Cotton, which indicates that the claims were barred from review because they were not cognizable on post-conviction review.  This court has repeatedly held that this provision and both Louisiana decisions are independent and adequate state grounds for dismissal barring federal habeas corpus review.  See, e.g., Johnson v. Cain, No. 12-0621, 2012WL5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.3, State ex rel. Melinie and State v. Cotton are independent and adequate); Evans v. Cain, No. 11-2584, 2012 WL 2565008, at *6-7 (E.D. La. Mar. 14, 2012), report adopted by, 2012 WL 2565001, at *1 (E.D. La. Jul. 2, 2012); Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D.

La. Oct. 29, 1999) (Berrigan, J.) (same).  Similarly, I find that the bar imposed under Article 930.3, State ex rel. Melinie and State v. Cotton, is an independent and adequate bar to review of the merits of Zantiz's claims that the state trial court refused to rule on his motion to quash and accepted the stipulation without a plea colloquy and that the State unreasonably delayed filing the multiple bill.

In addition, Louisiana's contemporaneous objection rule under La. Code Crim. P. art. 841, used by the Louisiana First Circuit to bar Zantiz's claim that the trial court refused to rule on his motion to quash, is also an independent and adequate state procedural rule.  Duncan v. Cain, 278 F.3d 537, 541 (5th Cir.) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)), cert. denied, 537 U.S. 829 (2002); Bowie v. Cain, 33 F. App'x 705, 2002 WL 432675, at *2 & n.9 (5th Cir. Mar. 7, 2002).  Under La. Code Crim. P. art. 841(A), "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  Relying on this rule, Louisiana courts have concluded that  "[a] defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal." State v. Browning, 956 So.2d at 72; State v. Young, 764 So.2d 998, 1005 (La. App. 1st Cir. 2000).

The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review.

17

See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state courts' reasons for dismissal of Zantiz's claims were therefore independent of federal law and relied solely on state procedural rules. The failure to preserve a claim under La. Code Crim. P. art. 841 is also an adequate state ground that bars review by the federal courts in a habeas corpus proceeding.  Duncan, 278 F.3d at 541 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims) (citing Wainwright, 433 U.S. at 87-88); see, Toney v. Cain, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); Marshall v. Cain, No. 04-219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation).  The procedural bar under La. Code Crim. P. art. 841 is also adequate in this case.

B.      CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Id. (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

In this case, Zantiz has not offered any cause for the default which would excuse the procedural bars imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Zantiz from asserting these claims in a procedurally proper manner.  The record does not reflect any action or inaction by the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Zantiz may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice,

petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Zantiz presents no argument and the record contains nothing suggesting his actual innocence on the underlying conviction or in his multiple offender adjudication.  On the contrary, the evidence of his guilt is substantial.  His claims address alleged procedural failings in the habitual offender proceedings, not his actual innocence.  For these reasons, Zantiz has failed to overcome the procedural bar to his claims, and his claims that the state trial court refused to rule on his motion to quash and accepted the stipulation

without a plea colloquy and that the State unreasonably delayed filing the multiple bill must be dismissed with prejudice as procedurally barred.

VI.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."   Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VII.   ADVICE OF RIGHTS (CLAIM NO. 1)

Relying on state law, Zantiz claims that he was not advised of his rights before entry of the stipulation or his guilty plea at the multiple bill hearing.  Zantiz first asserted this claim on direct appeal from the multiple offender proceedings, and the Louisiana First Circuit found the claim meritless. The appellate court noted that Zantiz had been fully apprised of his rights during a prior hearing on the multiple bill and that was sufficient to protect his rights.  The Louisiana Supreme Court denied Zantiz's related writ application without added reasons.

The question of whether a guilty plea was entered voluntarily and knowingly based upon an appropriate advice of rights is a mixed question of law and fact.  Pignataro v. Poole, 381 Fed. Appx. 46, 50 (2nd Cir. 2010) (citing Matusiak v. Kelly, 786 F.2d 536, 543 (2nd Cir. 1986)).

Zantiz bases his claim exclusively on state law.  A federal court, however, does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West

v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  "Errors of state law and procedure . . . are not cognizable unless they result in the violation of a federal constitutional right."  Lee v. Whitley, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that judge's purported violation of state law in failing to inform the petitioner of his right against self-incrimination in the habitual offender proceeding was not cognizable in a federal habeas corpus proceeding); see also Payne v. Whitley, No. 94-30101, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995); Odom v. Wheat, No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sept. 30, 2009) (order adopting report).

Even if Zantiz had attempted to frame this claim in terms of federal law, it would have to be dismissed.  State multiple offender proceedings are not determinative of guilt or innocence, and they do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications.  Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987).   For this reason, advice of rights has "only a limited application to multiple offender proceedings."  Joseph v. Butler, 838 F.2d 786, 790 (5th Cir. 1988).

> [I]n connection with guilty, or "true," pleas under state recidivist statutes, this circuit does not require that the full panoply of rights enunciated in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed.2d 274 (1969), be extended to the defendant.  See Holloway v. Lynaugh, 838 F.2d 792,

793 (5th Cir.), <u>cert. denied</u>, 488 U.S. 838, 109 S. Ct. 104, 102 L. Ed.2d 80 (1988).  A guilty plea to an enhancement charge is valid if the "'totality of the circumstances' in the record demonstrates that the plea was voluntary and intelligent."  <u>Swift v. Lynn</u>, 870 F.2d 1039, 1041 (5th Cir. 1989) (quoting <u>Holloway</u>, 838 F.2d at 793).

<u>Alexander v. Whitley</u>, 940 F.2d 946, 947 (5th Cir. 1991); <u>Joseph</u>, 838 F.2d at 789-90; <u>Swift v. Lynn</u>, 870 F.2d 1039, 1041-42 (5th Cir. 1989).

For a multiple offender plea to be considered knowing, "the defendant must have 'a full understanding of what the plea connotes and of its consequence.'"  <u>United States v. Hernandez</u>, 234 F.3d 252, 255 (5th Cir. 2000) (quoting <u>Boykin</u>, 395 U.S. at 244). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." <u>United States v. Rivera</u>, 898 F.2d 442, 447 (5th Cir. 1990); <u>Ables v. Scott</u>, 73 F.3d 591, 592 n. 2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes.  <u>Hobbs v. Blackburn</u>, 752 F.2d 1079, 1082 (5th Cir.), <u>cert. denied</u>, 474 U.S. 838 (1985); <u>Hernandez</u>, 234 F.3d at 256-57 (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

Considering the totality of the circumstances in the instant case, I find meritless – almost frivolous, in fact – any suggestion that Zantiz's guilty plea in the habitual

offender proceeding was involuntary or unintelligently made.  As determined by the Louisiana First Circuit, and contrary to Zantiz's allegations, the minute entry from the multiple bill arraignment on May 18, 2009, clearly reflects that the Zantiz was advised of his rights, including his rights to enter a plea of not guilty and against self-incrimination.[37]  Zantiz entered a plea of not guilty at that time, notwithstanding this clear advice.

At the scheduled hearing on the matter on September 10, 2009, Zantiz himself conferred with the court regarding the two prior offenses to which he was stipulating as part of his plea.[38]  After doing so, Zantiz through his counsel reconfirmed his decision to enter a plea of guilty to the multiple bill.  Thus, his habitual offender adjudication was "closely related, temporally and functionally," to the multiple bill arraignment proceeding, and "the same defense counsel, . . . court, and judge were involved in each." Buckley, 825 F.2d at 902.  Moreover, Zantiz was represented by counsel, who indicated that he and Zantiz had discussed the stipulation and plea.  Zantiz did not dispute this representation or any other portion of the plea hearing.

Moreover, Zantiz's guilty plea to the multiple bill was entered pursuant to a favorable plea bargain, which resulted in the exclusion of other prior convictions in the

---

[37]St. Rec. Vol. 3 of 6, Minute Entry, 5/18/09.

[38]St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, p. 2-3, 9/10/09; St. Rec. Vol. 3 of 6, Multiple Bill Hearing Minutes, 9/10/09.

multiple bill and in Zantiz receiving a more lenient five-year sentence as a third offender. Zantiz concedes that he knew he faced a six-year maximum sentence as a third offender. Zantiz does not contest the facts that he is in fact a third offender or that he has benefitted from the guilty plea. The totality of these circumstances lead me to conclude that Zantiz's guilty plea, entered with the assistance of counsel, was made voluntarily, knowingly and intelligently.

Zantiz has not established that the state courts' denial of relief on this issue was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Zantiz's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[39]

New Orleans, Louisiana, this _____9th_____ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[39]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.